2004 ME 79

**STATE of Maine**

v.

**Michael PATTERSON.**

Supreme Judicial Court of Maine.

Argued: April 13, 2004.

Decided: June 17, 2004.

Norman R. Croteau, District Attorney, Joseph M. O'Connor, Asst. Dist. Atty. (orally), South Paris, for State.

Thomas S. Carey (orally), Curtis J. Rice, Carey & Associates, Rumford, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Michael Patterson appeals from a judgment of conviction for assault (Class D), 17–A M.R.S.A. § 207(1)(A) (Supp. 2003),[1] entered in the District Court (Rumford, *McElwee, J.*) after a nonjury trial. Patterson contends that the District Court erred when it rejected his 17–A M.R.S.A. § 105 (1983) defense of property defense, which he asserts was applicable in the circumstances of this case. The record is unclear and conflicting as to whether the court applied the section 105 defense and rejected it, or whether the court concluded that the defense could not be applied as a matter of law. Because, on the evidence presented in this case, the application of the section 105 defense of property defense is *not* precluded as a matter of law, we vacate and remand for the court to clarify its determination as to the application of section 105.

I. BACKGROUND

[¶ 2] This case concerns two incidents arising out of a domestic dispute between Patterson and his girlfriend. At the time of the incidents, Patterson and his girlfriend had dated for about six years, and had resided together in the home where

---

1. Section 207(1)(A) provides: "A person is guilty of assault if ... [t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person. Violation of this paragraph is a Class D crime." 17–A M.R.S.A. § 207(1)(A) (Supp. 2003).

  The current version of section 207(1)(A) is the same as the version in effect at the time of the assault.

the assault occurred for about two years. The title to the residence was in Patterson's name alone. They had one child together, who was four years old and resided with the couple. Patterson's girlfriend had a child from a previous relationship, who also lived with them.

[¶ 3] On June 30, 2003, Patterson noticed a stain on some light cream-colored carpeting that he had purchased for the home a week before. Patterson was upset about the stain and verbalized his anger while he attempted to clean it up. Patterson's reaction to the stain upset the girlfriend, who then took a slice of pizza and began rubbing it into the carpet. Patterson picked her up and carried her out the door and onto the pavement at the base of their steps. He went back inside, leaving the door to the home unlocked. At some point, the girlfriend followed Patterson back into the house and told the children to go to the car and wait for her.

[¶ 4] Patterson and his girlfriend resumed their argument after she reentered the home. As the argument grew more heated, she threw objects and pushed over items, spilling the contents on the kitchen floor. At some point, she made statements threatening suicide. Patterson then grabbed her and brought her to the floor. The girlfriend's daughter intervened by jumping on Patterson's back until he got off the girlfriend. Then, the girlfriend and her daughters left the home.

[¶ 5] Concerned about the suicidal statements his girlfriend had made, and the fact that she was driving around with children in the car while unstable, Patterson called

the police. The police pulled the girlfriend over while she was driving. She went to the hospital to speak to a crisis worker.

[¶ 6] On June 30, 2003, Patterson was charged with two counts of assault, pursuant to 17–A M.R.S.A. § 207(1)(A). At trial, Patterson contended that his actions with regard to both incidents were justified; the first incident pursuant to 17–A M.R.S.A. § 105, and the second incident pursuant to 17–A M.R.S.A. § 106(6) (1983).[2]

[¶ 7] The District Court made findings on the record concerning each of the two separate incidents, which the court considered separate assaults. With respect to the second assault, the District Court found that the section 106 defense of the use of force to prevent a suicide applied, and acquitted Patterson of the second assault. The court found:

> [B]ased on [the girlfriend's] testimony as to how upset she was, the intentional acts she did in knocking property to the floor, perhaps stating things and stating -- she made statements that were consistent with a suggestion of suicide. I find that Section 106 applies to the second aspect of this case, and I find no assault based on that ... it's ironic that that was the most serious physical altercation between the parties in terms of degree of physical contact. However, I don't find it to be the most significant incident.

As to the first incident, however, the District Court found that Patterson's assault was not justified pursuant to section 105:

---

**2.** Section 105 provides: "A person is justified in using a reasonable degree of nondeadly force upon another when and to the extent that he reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of his property, or criminal mischief...." 17–A M.R.S.A. § 105 (1983).

Section 106(6) provides: "A person acting under a reasonable belief that another person is about to commit suicide or to inflict serious bodily injury upon himself may use a degree of force on such person as he reasonably believes to be necessary to thwart such a result." 17–A M.R.S.A. § 106(6) (1983).

[The] laws of our State leave something of a void for what has become the very common practice of adults living together as families without the benefit of marriage.... The unfortunate part of it is it ends up with people living with what amounts to separate ownership of property when, in a marital situation, that property is virtually deemed to be marital property under most circumstances. And in this I find a long relationship and that you indeed acquired record title to a home, and that you exclusively purchased some carpet for that home.... I do not find that a 105 defense applies here. Notwithstanding [the girlfriend's] intentional goading of Mr. Patterson, I do not find her actions with regard to the pizza to rise to the level of criminal mischief for the purpose of a criminal statute.... But the bottom line is you folks were living together and people who live together, they share furniture. They share carpets. They share bedding. They share everything.... And for you to make a distinction that night or in court here today that there's a legal defense under 105 for defense of destruction of property, I find that that does not apply in this particular case. And there is no defense available for your conduct, in my opinion.

[¶ 8] The District Court went on to state:

[W]hat [the girlfriend] did with regard to the pizza [was] inappropriate. It was intentional goading. It was done in front of the kids, and the only possible result it could have had was to escalate a very unpleasant situation. I understand that [the girlfriend] was acting under great stress that related to her father's illness, work, children. Modern lives today are very, very stressful. The bottom line, Mr. Patterson, is that regardless of conduct—and I use this often. People may think it trite, but "sticks and stones will break my bones but words ..." or conduct that's not directed against you physically never ever ever justifies a physical response. The bottom line is that it never justifies a physical response, and I do not find any distinction that the pizza incident rose to the level of criminal mischief.

[¶ 9] Based on what the court characterized as a crime of "a minimal nature," Patterson was sentenced to "simply the conviction," and a small fine. Patterson now appeals from that conviction.[3]

## II. ANALYSIS

■ [¶ 10] Title 17–A M.R.S.A. § 105 provides that "[a] person is justified in using a reasonable degree of nondeadly force upon another when and to the extent that he reasonably believes it necessary to prevent what is or reasonably appears to be ... criminal mischief." "A person is guilty of criminal mischief if that person intentionally, knowingly or recklessly ... [d]amages or destroys the property of another, having no reasonable grounds to believe the person has a right to do so." 17–A M.R.S.A. § 806(1)(A) (Supp.2003).

[¶ 11] The District Court stated that it found that the actions of the girlfriend did not "rise to the level of criminal mischief for the purposes of the criminal statute." Contrary to Patterson's contention, the evidence does not *compel* a finding by the court that the girlfriend's action of rubbing pizza into the carpet constitutes criminal mischief by damaging the property of an-

---

**3.** Where a trial court finds that an offense is *de minimis,* the court may dismiss a charge upon making the necessary findings. 17–A M.R.S.A. § 12 (1983). The court's disposi- tion, while finding the offense "minimal in nature," suggests it viewed the offense as more serious than *de minimis,* and therefore, not appropriate for dismissal.

other person. If the only statement made by the court was that the girlfriend's conduct did not rise to the level of criminal mischief, Patterson's appeal would have little merit. The court, however, went on to indicate that the section 105 defense could not be invoked by Patterson because (1) the property being damaged by the girlfriend was located in a home in which the parties were living together, and (2) there was no physical conduct directed against Patterson. To the extent that those statements reflect the court's conclusions of law, they are in error.

[¶ 12] Patterson contends that the District Court erred when it "determined that a statutory void existed and proceeded to fill it with what is essentially a common law marriage approach to property." Patterson and his girlfriend were an unmarried couple, who lived together as a family. Patterson owns the home and holds title to the home solely in his name. He purchased the carpeting. Maine case law does not support the District Court's legal conclusion that by virtue of their living together intimately, the girlfriend and Patterson shared ownership of the household property. The State relies on two cases, *Ackerman v. Hojnowski,* 2002 ME 147, 804 A.2d 412, and *Bradford v. Dumond,* 675 A.2d 957 (Me.1996), to support the court's conclusion that section 105 cannot be applied in the circumstances of this case. Those cases hold that joint tenants or tenants in common both have rights to the property. *Ackerman,* 2002 ME 147, ¶ 2, 804 A.2d at 413–14; *Bradford,* 675 A.2d at 960–61. They do not, however, support the conclusion reached by the court that the girlfriend and Patterson ipso facto shared ownership to all of the household property, including the carpet. The parties were not married, the house was owned solely by Patterson, and the carpet was purchased by Patterson.

■ [¶ 13] Maine does not recognize common law marriage. *Pierce v. Sec'y of the United States Dep't of Health, Educ. & Welfare,* 254 A.2d 46, 47–48 (Me.1969); *see also Grishman v. Grishman,* 407 A.2d 9, 12 (Me.1979) (stating that it is inappropriate to treat property acquired by parties before marriage as marital property because it "would only introduce new uncertainties into our law"). The effect of the court's conclusion appears to be that the relationship between Patterson and his girlfriend is one of common law marriage, and on that basis, they shared property as a married couple would share property. Such a conclusion is not supported in Maine law. Moreover, even if the girlfriend had some rights of ownership in the carpet, her intentional, knowing, or reckless damaging of the property *could* constitute criminal mischief.

[¶ 14] Patterson also contends that the District Court's determination that a physical response can never be justified when conduct is not directed physically at a person is "at odds with 17–A M.R.S.A. § 105 and contradicted by prior caselaw." This determination is a legal conclusion, which we review de novo. *See State v. Lockhart,* 2003 ME 108, ¶ 15, 830 A.2d 433, 441.

[¶ 15] The District Court found that the girlfriend intentionally goaded Patterson by rubbing the pizza into the carpet. The court stated that "conduct that's not directed against you physically never ever ever justifies a physical response. The bottom line is that it never justifies a physical response, and I do not find any distinction that the pizza incident rose to the level of criminal mischief." That statement contradicts section 105, which *does* allow the use of physical, nondeadly force to protect property. We concluded in *State v. Winchenbach,* 658 A.2d 1083, 1085 (Me.1995), that "[a]ny force used by the victim in attempting to keep defendant

from hitting [the victim's *automobile*] was justified to prevent criminal mischief." Therefore, to the extent that the District Court concluded that the section 105 defense could not be applied as a matter of law in the absence of physical force directed at a person, and that the section 105 defense could not be applied when damage is being done to property owned only in part by the defendant, the court erred.

[¶ 16] Because the conflicting statements of the court make it impossible for us to ascertain whether the court found that Patterson failed to provide sufficient evidence to generate the section 105 defense, or whether it concluded that the defense could not be applied as a matter of law, *State v. Foster*, 566 A.2d 1084, 1086 (Me. 1989),[4] and because a defendant is entitled to a decision of the court based on the record, *State v. Pelletier*, 534 A.2d 970, 972–73 (Me.1987), we must vacate and remand to allow the court to make clear its findings of fact and conclusions of law.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

4. The District Court stated that Patterson's girlfriend intentionally provoked or goaded him by rubbing the pizza into the carpet, a required element for criminal mischief, but also stated that criminal mischief could not be committed by someone who was essentially a common law wife and that "conduct that's not directed against you physically never ever ever justifies a physical response."